Bayside Construction LLC v. Smith Chief Counsel. Good morning and may it please the court. My name is Colin Hagen. I represent the appellants, Jeff and Sarah Smith, who are present in the courtroom today. With your honor's permission, I'd like to reserve five minutes for rebuttal. Under the Federal Arbitration Act, an arbitrator's award may be vacated when it exceeds the arbitrator's authority. And that occurs in a case like this, where the award manifestly disregards substantive law or the terms of the party's agreement. So if I could just ask you, on that point, you've blended the two terms. Are you seeking a holding that manifests disregard as an independent basis for vacating, or do you see it as part and parcel as the exceeds jurisdiction? That's a good question, your honor. We see it as somewhat distinct because you could or an arbitrator could exceed their authority in other ways besides manifestly disregarding substantive law. In light of the circuit split on whether manifest disregard is a basis for vacature under the Federal Arbitration Act, we've seen this court's decision seem to treat it as manifest disregard as sort of a theory or a means by which an arbitrator exceeds his authority. And so they are somewhat blended, but they can be distinct, and we view them as distinct. They would be independent basis for vacating the arbitrator's decision. Wall Street seems pretty explicit, though, right, that there are only enumerated grounds under the FAA. So how do you square the idea of manifest disregard with Wall Street? Well, so that's exactly right. There are at least four cases that we cited where this very court has found that manifest disregard can be a basis for vacating an arbitrator's decision. And like I said, I think the most recent one was the Simons v. Brown case from February of this year. And I believe it's the – I don't have the case in front of me, but the case law that we've seen from this circuit seems to treat the manifest disregard as a species of exceeding the arbitrator's authority. And so I think that it fits it in with the enumerated basis under the Federal Arbitration Act by sort of squeezing it in as an exceedance of authority. And I think that's an appropriate way because, like I said, one way that an arbitrator might exceed their authority is by disregarding the substantive law that is the basis of the contract. That also fits neatly with the theory that – and the well-recognized theory that arbitrations are creatures of contract. All this comes down, Mr. Hagan, to the assertion that what? That the arbitrator didn't apply DI law. So that's the undergirding of your argument, isn't it? Absolutely, Your Honor. And in particular – Don't you have to show that the arbitrator's actions, even if he didn't cite Virgin Island law, was somehow inconsistent with Virgin Island law? If I understand your argument, it is that there was shoddy work done, and that shoddy work on the two showers and the pool mean that the smith's duty to pay amounts owed for repair work was lifted. They didn't have to pay at that point. Am I correct about your underlying argument? That is part of the argument, but it's not the full argument. I think what Your Honor is describing was the basis of how the arbitrator described it. The arbitrator used the word shoddy, and he gave basically an offset to the Bayside award for the amount of two showers and some of the pool work. But the smith's claim was not that it was just some shoddy repairs done on a couple of showers and the pool, that it was a much more substantial failure to – Well, now you're getting into a factual dispute with the arbitrator and not a manifest disregard of the law. There's the smiths, and I don't gainsay their frustration at all, but they don't like the fact-finding of the arbitrator, but that doesn't make what the arbitrator did a manifest disregard of law. If we accept for purposes of discussion here that the arbitrator gets to find the facts and found the facts as the arbitrator described them, then what we're talking about is the legal question whether shoddy work on a couple of showers and the pool allowed the smiths to say we're not paying on this contract. And if that's the point that the arbitrator ruled on and said no, that isn't what you're allowed to do, don't you have to show that that arbitrator decision on the legal point was a manifest disregard of Virgin Islands law? I believe so, and believe that it was a manifest disregard of Virgin Islands law as expressed in the Creative Minds v. Reef Broadcast case that was essentially reapplied or at least supported subsequently in the Gourmet Gallery Crown Bay case. In the Creative Minds case is, I think, very instructive because that was a very similar case where the – well, similar in the sense that the court in that case found that both parties had breached the particular broadcast brokerage agreement but awarded damages ultimately to the plaintiff. And the defendant was saying those… Well, go ahead and finish your point. Sure. The defendant in that case was saying that the plaintiff's breaches should have excused performance, and I think the court decided that not only were those breaches minor or immaterial but that the defendant had also reaffirmed the contract by accepting subsequent work and condoning further performance under the contract. Okay. Making the point that… So how does that help you? Well, it makes the point that once there are those breaches, if you condone further work under the contract, you reaffirm it, then you basically waive the right to claim those breaches. Well, isn't the point also, though – and this comes up in the Felton case – that if you want to be relieved of your payment duty, you've got to demonstrate that the breach was material and remained uncured, right? That's consistent with the case you're describing, and that's Virgin Islands law, isn't it? As we understand it, yes. And that's what the Smiths pressed at the arbitration. That's what they pressed in their motion to dismiss the petition to confirm the award. And if the arbitrator on the factual point says, look, I just – I don't agree with you. I think this was like a $30,000 difference, and on a $700,000 contract that's about 4%, that's not material. I mean I'm putting words in the arbitrator's mouth, but isn't it entirely consistent with Virgin Islands law to say if there's a 4% difference on the contract in the quality problem that you've got with the work, that's not material and you don't get to not pay? That's – if you understand what I'm asking, I'm asking whether this doesn't devolve down to a factual dispute again. So I agree that that's what the arbitrator concluded as to the amount of the offset that he was going to award, approximately $40,000 for those two showers and the pool. But that was not – I don't even think that was the extent of the damage or lack of performance that he found had occurred because he referenced the mortgagee's – the mortgagee had hired someone, an architect, to come and review the premises as well, and that architect had identified further failures of performance. Bayside had indicated, well, as to some of those, we'll repair it. As to other of those, we're going to reduce the price. And it reduced the price, but it nevertheless went and got a lien for the full price exceeding the amount that it was – that was the revised amount of its third and fourth draw as the arbitrator described it. So – And how did the arbitrator handle that? Well, he viewed the reduced price as the total amount owed, the remaining amount owed, less the amount of the offset that he awarded in favor of the Smiths. So there was – his determination was I'm giving you a set-off for what I think the problematic work was, right? Why? Because that was what remained in dispute as to – well, I guess that was what remained in dispute as to the time of the arbitration. But that doesn't reflect the total amount of the damage or the failure to perform that occurred because there were those things that had not been done. There were those things that had been done improperly, and there was frankly – it's not just a failure of you didn't install the right fixtures or you didn't do the pool correctly or the showers correctly. There was affirmative damage to the house, cracks in the wall, other damage to wood floors, and many things like that that don't even seem to be treated in the award. It's not necessarily that the arbitrator was saying I heard that evidence and I find against you on that evidence. It's just not treated at all in the award. Okay. Well, just a quick question on the cure. I thought the arbitrator also found that even if there had been default to breach or something, that the contract required notice and an opportunity to cure and then that usual standard. And since that didn't occur, what – is that a separate hurdle that you'd have to overcome? I don't think so, Your Honor, because the breaches I think were so material that they could not be cured. I think the way the arbitrator described it was that as of March 2019 where the Smiths claimed default against Bayside, that their frustration, as Your Honor put it, with the performance didn't entitle them to – at that time to claim a breach. And again, that's a completely unexplained conclusion as to why at that particular point in time it wasn't a sufficient – I think the arbitrator described it as a lack of faith in Bayside's performance. But that suggests or presupposes that there could come a time that there is a sufficient lack of faith that would excuse any basis for an opportunity to cure. And there were frankly other things that – Well, you're – we've given you some extra time. You reserved five minutes. Sure. And so – and we will have you back on rebuttal, Mr. Hagan. We'll go ahead and give Mr. Caddy his opportunity to speak. Thank you, Your Honor. May I proceed? Yes, please. Good morning, Your Honor. To the pleas of the court, my name is David Caddy and I'm here on behalf of the appellee Bayside Construction LLC. Your Honor, there is no principle in the law in the Virgin Islands or anywhere else that says I don't have to pay for completed satisfactory work because some small portion of other work is unsatisfactory. And that is what the Smiths are claiming in this case. We don't have to pay for anything because the arbitrator found that some small portion of the work was incomplete. Well, the argument is a little more nuanced than that because they say the arbitrator just didn't apply Virgin Islands law at all. He was applying the wrong law. What's your answer to that? He didn't cite a single Virgin Islands case. He was citing out-of-jurisdiction law, and that means that his decision is fundamentally flawed. Do you have a response? That is unsupported. Now, the fact he didn't cite to any Virgin Islands law, he didn't cite to any law, there's no requirement that he do so. The Smiths would have to come forth and say, here's some principle of law that he failed to apply. And the principle of law they're saying he failed to apply are two cases that they never cited to before the arbitrator, so they can't sustain that he even knew about these cases as principle of law. But the cases they rely on don't say what they're saying they say. None of those cases say you're alleviated from any obligation to perform any part of a contract if the other party breaches any other portion of it. And it's important to remember, the arbitrator found in this case, Bayside was never in breach. And Bayside was never in breach because there was a cure provision in the contract, as there is in virtually every construction contract that says, if you give us notice of default, which the Smiths did, we now get to come back and we get to fix, or at least attempt to fix, what you think is wrong. The Smiths did that in this case. They issued a notice of default that said, you're not coming back in. What the arbitrator said is, well, you didn't let them do that, so you're the party that's in breach. But I'm not going to impose kind of the harsh remedy, which would, Bayside gets all of its money. I'm going to go to the AAA rules and do you a favor. In equity, I'm going to say, hey, some of this work is shoddy, 4%, as the court pointed out. So I'm not going to make you pay for that. Even though Bayside never charged for that, he said, I'm going to reduce your reward from that. So they got kind of a double benefit here that they're complaining about. But there is nothing in the facts or in the law, and it's important to recall here, the Smiths filed a counterclaim. So their allegations, well, the judge didn't consider, the arbitrator didn't consider that the rest of this work is shoddy, is unsupported. Their counterclaim is all of the work is bad. The arbitrator says, no, the two showers and the pool is bad. Why would the Smiths be alleviated from paying for a roof, for a bond beam, for painting, for mold remediation? Because some other part of the contract was shoddy. There is no principle of law that supports that idea. And therefore, the arbitrator's rule was absolutely correct, and the district court was correct in affirming that arbitration award. What the Smiths are fundamentally asking this court is to say, and the example I give is, if the contract was for me to build 10 houses, and I built you nine houses that were fine and one house that was shoddy, what the Smiths are saying is, I get nine free houses, too. I don't have to pay for the shoddy house, and I also get these nine other houses for free. That is the principle of law they're espousing here, and it doesn't exist anywhere. Because if you had that principle of law, anytime somebody built a structure, a home or a building, the buyer would just say, well, this window's messed up. I want the rest of the building for free. That is, I'm sorry. All right. Mr. Catty, help us with the assertion that we're getting from the other side that there's manifest disregard. I understand you're saying there isn't here, but as a legal matter, have we ever decided or has the U.S. Supreme Court ever decided whether manifest disregard is a basis for overturning an arbitration order? I'm taking you up a level on the abstraction ladder, but is the legal point they're pressing even one that, if we agreed with them, we could say, yeah, that's the law. Manifest disregard is a basis for throwing out the arbitrator's award. Well, Wall Street says it can't be. The only way it can be, and I think some courts have described it as maybe judicial flourish on the exceeding authority, it has to fit into that box. It can't be anywhere else. It can't stand alone. It has to exist only in that box. So it's not a freestanding. No, and it cannot be. Wall Street said it cannot be. Now, some courts just say, well, yeah, we're just going to say exceeding authority and manifest disregard are the same thing, and I treat the arguments that they make as essentially the same thing. They're saying he exceeded his authority by not applying this Virgin Islands law, but no, as a standalone proposition, it cannot stand. They can only proceed on that if this court determines, well, it's really just fitting into the exceeding authority box. So in the opening brief, the Smiths have said that they were caught in a heads-I-win, tails-you-lose kind of a trap here. Is there, in fact, an unconscionability problem in the contract that we have to deal with? There's not. And even if the court thought there was, the arbitrator got them out of it by using Rule 48. So it's not heads-I-win, tails-you-lose. It's the arbitrator saying, well, I think that the contract might be harsh because if I deny, if the Smiths deny the right to cure, Bayside gets everything. And it's not just the 275. It would be, I think, whatever, the 382, the remaining balance of the contract. The arbitrator says, I'm going to do you a favor. I'm not going to do that, even though that's what the contract requires. I'm going to use Rule 48, which is the AAA rules discussed specifically in the contract, and I'm allowed to do that. And in equity, I'm going to say, listen, even though Bayside's not in breach, I'm going to impose the warranty provision. And there's two items in the house, in the bathrooms, and one item in the pool. And I'm going to say that under the warranty provision, I'm going to reduce the award by that. So it's not heads-I-win, tails-you-lose. It's the arbitrator saying, I'm going to use the rules that are provided by the AAA and that are referenced in the contract to reduce this award. So you don't wind up in a situation where you're paying for work that I deem shoddy, even though under the contract, because Bayside should have been able to come back and cure that, they would have been liable to us for the additional $37,000. The arbitrator— By using the rules and procedures of arbitration, in fact, the arbitrator was complying with the contract because it did so provide that that was what he would do. Is that correct? That's correct. It specifically stated that. And in addition, the rule that it relied on says you can give an equitable remedy as long as that's something that's within the contract. So the arbitrator did exactly what the contract called for and did that to the benefit of the Smiths. And what I said to them is, be careful what you wish for, because if this court says, well, they shouldn't have done that, well, then I'm entitled to another $30,000 plus 18% interest. So it kind of baffles me that they would complain about the arbitrator using the AAA rules. He only employed the AAA rules to their benefit and to our detriment. So it's not a grounds for them to complain on appeal. And to note, I'm not asking for any relief whatsoever from the arbitrator's award, but it was a benefit to them that they're complaining about in this case. The Bayside did all of this work, and this is a very small portion of it he found to be shoddy and said, you don't have to pay for that. That is common in every contract. Anyone that builds a house, there's always some issue. What you can't have is what the Smiths are asking is, you do a $700,000 job. If I can point out anything that's wrong with that, even if it's unrelated to the other work, I don't have to pay for anything. So the essential question is, why would you not have to pay for a roof because the pool was done in a shoddy manner? There's no principle of law for that, and the arbitrator correctly noted that and gave them relief that they're complaining about. Further from you. I have nothing further. Okay, thank you. Argument. Thanks, Mr. Caddy. We'll hear your rebuttal. Thank you, Your Honor. Excuse me, and I'll just I'll just pick up where my brother left off, which is, I think, inaccurate. The Smiths are not claiming necessarily that because, you know, there was some minor flaw in the construction that they therefore don't have to pay any of the contract price. They are claiming that they had to go and redo and pay to, you know, an excess price to redo much of the work that was done. But when you get there, when you get there, aren't you taking us into the facts? In other words, look, we don't have any brief for or against the Smiths or Bayside, right? We were presented with an arbitrator's award and the arbitrator found some facts. As soon as you start saying, well, no, the work was a lot worse. It wasn't just the pool and it wasn't just the two baths. That's the shoddy work. That's the locus of the problem. And that's what we have to look at. No, in fact, that's not the basis of the Smith's appeal, at least as it's been presented to this court. I was simply responding to the factual assertion made by my colleague. But the legal issue that the that the arbitrator disregarded is, again, that a breach or at least a material breach would excuse for further performance. Now, now we're hearing get to them as soon as you say material breach. Are we or are we not into the facts? Potentially, but the but the I don't know how we cannot be. How can we not be into the facts if the question is materiality? Well, we're presenting this not necessarily as on the basis of the facts, but on the basis of the law and the arbitrator's conclusions that disregarded that law. And I think that there is a key provision in the award that describes how the arbitrator disregarded the law. And that's because he concluded that under the termination clause, even if the contract is terminated because of the contractor's default, there is no loss or penalty to the contractor resulting from its default. The contractor ends up whole even if the work was substandard. So the idea that that the Smiths are somehow claiming that they shouldn't have to pay for the entirety of the contract. There's no way to determine that based on the contract, because these draws are just off of a total contract price. And they're not as the arbitrator described in his award. They're not even tied to specific work or a specific milestone of performance. So is your argument an unconscionability argument? Well, that is. It is. Did you ever make that argument to the arbitrator? I believe so, but I was not the counsel during the arbitration, so I don't want to speak out of turn or make any type of misrepresentation. We have not briefed the issue of an unconscionability. Exactly. I'm wondering, because I noted your complaint of the thing you've read here, and your assertion that it's heads I went to as you lose. It sounds to me, it sounds to me like you're saying this is an unconscionable contract. They were put in an untenable position. That's not anything that was ever. It doesn't look like that was something that was put in front of the arbitrator. This was just a straight up. Argument about just how material the breach was the asserted breach and whether there was a breach at all. Based on the fact that the Smith said we don't want you back on our property, ergo, they didn't get a chance to cure. That's. You know, that's the that's the factual scenario that it looks like we're dealing with. Based on the wrong about. Well, I think based on the limited record that you have out of an arbitration and the limited scope that you have with respect to an appeal from it, or a motion to vacate or or deny a petition to confirm the award. I think that that is essentially the factual scenario. But the Smiths are challenging essentially the the unconscionability because they have brought a separate action against Mr. Ostrander and Mr. Jones, who were the well, one of them is essentially the principal of Bayside. And the other was the attorney that led them into this scenario. And that's another case pending before the court. So not not ours. Not yet. And I don't want to say that because they've been you know, there's been a decision to force them to arbitrate that claim as well that I think was has been appealed. And there's a question as to whether it was interlocutory or on a final decision. So not to get too into the facts on that case. But the Smiths are challenging that and what they believe or what we understand is the appropriate form of procedural posture to do so. Okay, so there may be another chapter story. All right. Understood. Thank you, Mr. Hagan. Appreciate your argument. Well done, Mr. Thank you. Thank you for your time. We've got the matter under advisement.